UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1, a California Company,

    Plaintiff,

    v.

TBR I, LLC, a Nevada Limited Liability Company,

    Defendant.

3:15-CV-00401-LRH-WGC

ORDER

Before the Court is Third Party Defendant Highland Ranch Homeowners Association's ("Highland") Motion to Dismiss Third Party Complaint and Complaint and Request for Judicial Notice. ECF No. 23.[1] Third Party Plaintiff TBR I, LLC ("TBR") filed a response (ECF No. 30), as did Counter Defendant and Plaintiff Deutsche Bank National Trust Company ("Deutsche") (ECF No. 31). Highland filed a reply to both responses. ECF No. 32 and 33.

**I. Factual Background**

This is a case arising out of a homeowner's association ("HOA") lien and a foreclosure sale. On September 1, 2006, Anginique Wilson ("Wilson") and Claudio Cesar Alvanez ("Alvanez") purchased residential property located at 886 Midnight Court, Sun Valley, Nevada (the "Property"). They signed a Deed of Trust encumbering the Property. The Property was part of the Highland Ranch HOA. On July 22, 2009, the Deed of Trust was assigned to Deutsche.

---

[1] Refers to the Court's docket number.

1

1  On January 9, 2012, Highland recorded a Notice of Delinquent Assessment and Claim of Lien.
2  On June 27, 2012, Highland recorded a Notice of Default and Election to Sell.  On March 26,
3  2013, the Property was sold to Highland for $450, and it recorded a Deed in Foreclosure of
4  Assessment Lien.  On August 23, 2013, TBR purchased the property from Highland and title was
5  transferred through a quit claim deed.

6  On August 6, 2015, Deutsche filed a complaint against TBR for quiet title and
7  declaratory relief.  ECF No. 1.  On October 14, 2015, TBR filed a counterclaim against Deutsche
8  and a third party complaint against Highland for quiet title and declaratory relief and for
9  equitable indemnity and relief against Highland.  ECF No. 9.

10  On December 10, 2015, Highland filed a motion to dismiss the complaint and the third
11  party complaint and for judicial notice.  ECF No. 23.  On December 28, 2015, TBR filed its
12  response.  ECF No. 30.  On December 29, 2015, Deutsche filed its response.  ECF No. 31.  On
13  January 7, 2016, Highland filed its response to TBR's opposition.  ECF No. 32.  On January 8,
14  2016, Highland filed its response to Deutsche's opposition.  ECF No. 33.

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference, based on the Court's "judicial experience and common sense," that the defendant is liable for the misconduct alleged. *See id.* at

678-79. The plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* The "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

**III. Discussion**

    **A. The Statute**

Under NRS § 116.3116, a homeowners' association can establish a "lien on a unit for ... any assessment levied against that unit or any fines imposed against the unit's owner from the time ... the assessment or fine becomes due." NRS § 116.3116(1). Section 116.3116 further provides that such a lien "is prior to all other liens and encumbrances on a unit except," among other categories of liens, "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." NRS § 116.3116(2)(b). The statute, however, contains an exception to this exception, allowing a homeowners' association to establish a lien that takes priority over a first security interest for unpaid assessments over a nine-month period preceding the enforcement of the lien. NRS § 116.3116.3. The statute also sets

1  out the procedures a homeowners' association must follow in a nonjudicial foreclosure of its lien.
2  Recent amendments to the statute require individual notice of default and notice of sale to all lien
3  holders of record via certified mail. S.B. 306 § 3-4, 9(1) 2015 Leg., 78th Sess. (Nev. 2015).

4  In 2014, the Nevada Supreme Court ruled that NRS § 116.3116 creates a "true
5  superpriority lien" for nine months of unpaid association assessments and certain charges. *SFR*
6  *Invs. Pool 1, LLC v. U.S. Bank, N.A*., 334 P.3d 408, 419 (Nev. 2014) (en banc). Accordingly, the
7  court further held, a nonjudicial foreclosure of an homeowners' association lien under NRS §
8  116.3116 would extinguish any first deed of trust, so long as certain statutory notice
9  requirements are followed. *See id*. at 411-17. Before *SFR Invs. Pool*, courts across Nevada had
10 interpreted this portion of the statute inconsistently.

11 **B. Due Process**

12 Deutsche argues that NRS Chapter 116 is unconstitutional because it allows for its
13 property interest in the first deed of trust to be taken without adequate notice. Deutsche contends
14 that NRS Chapter 116 provides only for "opt-in" notice, rather than mandatory notice, and that
15 this arrangement is unconstitutional under the notice requirements necessitated when a state
16 action affects property interest as established in *Mullane v. Central Hannover Bank & Trust Co*.,
17 339 U.S. 306 (1950), and *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791 (1983).

18 The Fourteenth Amendment provides: "No state shall ... deprive any person of life,
19 liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It thus shields
20 citizens from unlawful governmental actions, but does not affect conduct by private entities. The
21 "dispositive question" to a constitutional due process challenge is "whether there was state
22 action." *Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003). This threshold
23 question is not satisfied here because the actions authorized under NRS Chapter 116 do not rise
24 to the level of state action.

25 The Supreme Court has held that foreclosure procedures implicate the Fourteenth
26 Amendment only where there is at least some direct state involvement in the execution of the
27 foreclosure or seizure. *See Fuentes v. Shevin*, 407 U.S. 67, 70–71 (1972) (clerk of court made
28 out writ of replevin authorizing seizure of property by sheriff); *Sniadach v. Family Fin. Corp*.,

4

395 U.S. 337, 338–39 (1969) (clerk of court issued summons at request of creditor's counsel, setting in motion garnishment of wages).

While it is true that state endorsement or enabling of private action can sometimes constitute state action for due process purposes, "[t]he existence of a state statute authorizing certain private action 'is not the final answer to the touchstone of state action.'" *Culbertson v. Leland*, 528 F.2d 426, 429 (9th Cir. 1975) (quoting *Adams v. Southern California First National Bank*, 492 F.2d 324, 330 (9th Cir. 1973).

In fact, the Ninth Circuit has very clearly addressed whether nonjudicial foreclosures amounted to state action on more than one occasion. In *Charmicor v. Deaner*, 572 F.2d 694 (9th Cir. 1978), a corporation challenged Nevada's nonjudicial foreclosure statute on the theory that it violated the due process clause of the Fourteenth Amendment by failing to provide a pre-sale hearing. The Nevada statute allowing for nonjudicial foreclosures did not simply confirm a contractual or common law right, rather it "confer[ed] a power of sale upon the trustee." *Id*. at 695. Nevertheless, the Ninth Circuit held that "the statutory source of Nevada's power of sale ... does not necessarily transform a private, nonjudicial foreclosure into state action." *Id*. The court concluded that Nevada's nonjudicial foreclosure statute did not constitute state action and upheld the district court's dismissal of a due process claim.

More recently, in *Apao*, 324 F.3d 1091, the Ninth Circuit revisited and explicitly affirmed its holding in *Charmicor*. The *Apao* court noted that nonjudicial sales do not involve "overt official involvement" and are neither compelled nor encouraged by the statute; and while the statute may recognize and even authorize "private self-help remedy," such authorization is not enough to "convert private conduct into state action." *Id*. at 1094-1095 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164-54 (1978)). The court further noted that any procedural issues with the foreclosures were unrelated to "the threshold [and] dispositive question as to whether there was state action." *Id*. at 1095.

The statute here similarly lacks any overt official involvement to convert an otherwise private nonjudical foreclosure sale into state action. *See SFR Invs. Pool*, 334 P.3d at 410-12 (describing history and function of the law). Applying *Charmicor* and *Apao*, the nonjudicial

5

foreclosure scheme governed by the statute cannot be considered state action for the purposes of a due process challenge. Thus, Deutsche's due process argument falls short.

### C. Takings Clause

"[T]he Takings Clause pertains only to state action." *Russell v. OneWest Bank FSB*, No. 1:11-CV-00222-BLW, 2011 WL 5025236, at *11 (D. Idaho Oct. 20, 2011). "The United States Constitution protects individual rights only from *government* action, not from *private* action." *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003). While Deutsche argues that a taking occurred because NRS Chapter 116 is "a direct product of government conduct and regulation," the fact is that Highland conducted the sale, not the government, and a nonjudicial foreclosure by a private lien-holder is not a function of the government. *See Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003) (a lender's non-judicial foreclosure pursuant to state law was not a government action); *Mendez v. Fiesta Del Norte Home Owners Ass'n*, No. 2:15-CV-00314-RCJ-NJ, 2015 WL 3507699, at *3 (D. Nev. June 4, 2015) ("non-judicial foreclosure sales by private lien-holders are not traditional government functions"); *Russell v. OneWest Bank FSB*, No. 1:11-CV-00222-BLW, 2011 WL 5025236, at *11 (D. Idaho Oct. 20, 2011) (A foreclosure sale involves state action only when there is "overt official involvement in the enforcement of creditors' remedies"); *S. Comfort Campgrounds v. Fed. Home Loan Bank Bd.*, No. CIV. A. 89-4417, 1995 WL 63090, at *2 (E.D. La. Feb. 14, 1995) (foreclosure sale was not a taking under the Fifth Amendment because "a taking only results from the government's exercise of its sovereign power to appropriate private property for public use). As to Deutsche's argument that NRS Chapter 116 resulted in the total destruction of the value of their property, this argument has already been rejected. *See U.S. Bank, Nat. Ass'n v. NV Eagles, LLC*, No. 2:15-CV-00786-RCJ, 2015 WL 5210523, at *5 (D. Nev. Sept. 3, 2015) ("The destruction of an undersecured junior lien via the foreclosure of a senior lien under priority rules published before the junior lienor took his lien has never been held to implicate the Takings Clause").

///

///

### D. Collection Costs and Fees

Next, the parties dispute whether collection costs and fees can be included in the lien. Deutsche argues that because the inclusion of attorney's fees and collection costs in the association's lien violates NRS Chapter 116, a question of fact exists as to whether the HOA lien is statutorily improper and whether the HOA sale must be found invalid. Highland argues that its lien and the superpriority portion of the lien included collection fees and costs.

The Nevada Supreme Court recently issued an opinion on this issue. The Court concluded that "a superpriority lien pursuant to NRS 116.3116(2) does not include an additional amount for collection fees and foreclosure costs that an HOA incurs preceding a foreclosure sale; rather, it is limited to an amount equal to nine months of common expense assessments." *Horizons at Seven Hills v. Ikon Holdings*, 132 Nev. Adv. Op. 35 (2016).

Therefore, costs of collection cannot be included in an association's superpriority lien, and a question remains as to the HOA sale's compliance with NRS 116.3102 et seq.

### E. Commercial Reasonableness

Deutsche argues that the foreclosure sale was commercially unreasonable due to the circumstances of the sale and based on the very low sales price compared to the fair market value of the property and the value of the loan it secured. Highland argues that Deutsche offers nothing but conclusory allegations.

The Supreme Court of Nevada recently clarified that under Nevada law, "courts retain the power to grant equitable relief from a defective [HOA] foreclosure sale when appropriate ...." *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, Inc.*, No. 63180, --- P.3d ---, 2016 WL 347979, at *5 (Nev. Jan. 28, 2016) (en banc). Because Deutsche seeks to quiet title in itself, it bears the burden of demonstrating there are sufficient grounds to justify setting aside the HOA foreclosure sale. *Id.* at *6 (stating "the burden of proof rests with the party seeking to quiet title in its favor"). "[D]emonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* (citing *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982)). In considering whether equity supports setting aside the sale, this Court also considers any other

7

factor bearing on the equities, including the actions or inactions of the party that seeks to set aside the sale and the impact on a bona fide purchaser for value. *Id*. at *8-9 (stating that "courts must consider the entirety of the circumstances that bear upon the equities").

Deutsche's complaint adequately alleges an equitable basis to potentially set aside the sale. Deutsche alleges, on information and belief, that the $450 sale price was a small fraction of the property's fair market value, which they allege exceed $37,000. Thus, the sales price was 1.2% of the alleged fair market value.

In order to determine what constitutes an inadequate price, the Nevada Supreme Court cites favorably to the Restatement of Property Mortgages Section § 8.3 which states that "[g]ross inadequacy cannot be precisely defined in terms of specific percentage of fair market value [, g]enerally ... a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value, and, absent other foreclosure defects, is usually not warranted in invalidating a sale that yields in excess of that amount." *Id*. Deutsche has, therefore, sufficiently demonstrated that the price of the property was "grossly inadequate" as defined by the Restatement of Property Mortgages Section § 8.3. Accordingly, as the Nevada Supreme Court has previously held, "[a] wide discrepancy between the sale price and the value of the collateral compels close scrutiny into the commercial reasonableness of the sale. *Levers v. Rio King Land and Investment Company*, 560 P.2d 917, 920 (Nev. 1977); *Shadow Wood*, 132 Nev. Adv. Op. at *6. It is unclear whether Nevada's favorable citation to the Restatement indicates that it has adopted the Restatement's view that gross inadequacy is proof of unfairness, and, consequently, the only element necessary to void a foreclosure sale. If Nevada adopted the Restatement, the analysis would end here. One percent is well below the Restatement's twenty percent threshold to demonstrate gross inadequacy. However, *Shadow Wood* does not provide such clarity. Absent a clear statement from the Nevada Supreme Court that it has adopted the Restatement's rule, this court will continue to analyze commercial reasonableness under *Long*'s two-part test. *Long v. Towne*, 639 P.2d 528, 530 (1982).

Consequently, the court turns to whether the circumstances surrounding the sale demonstrate "unfairness" under the *Long* test that would invalidate the sale. Nevada has not

clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 93 Nev. 95, 98, 560 P.2d 917, 920 (1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 110 Nev. 181, 186, 871 P.2d 288, 291 (1994) (citing *Savage Constr. v. Challenge–Cook*, 102 Nev. 34, 37, 714 P.2d 573, 574 (1986)). When a sale price is demonstrably inadequate, courts in equity may invalidate a sale upon a showing of any slight defect in the sale. The United States Supreme Court in *Ballentyne v. Smith* held that "if there be great inadequacy, slight circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify setting it aside. It is difficult to formulate any rule more definite than this, and each case must stand upon its own peculiar facts." 205 U.S. 285, 290 (1907) (citing *Graffam v. Burgess*, 117 U. S. 180, 191-92 (1886)). Several other jurisdictions have recently utilized this balancing test. *See, e.g., Meng v. CitiMortgage, Inc.*, No. 4:12-CV-514 CAS, 2013 WL 1319008, at *5 (E.D. Mo. Mar. 29, 2013); *In re Krohn*, 203 Ariz. 205, 213, 52 P.3d 774, 782 (2002) ("where the price thus bid ... is greatly disproportionate to its actual value, very slight evidence of unfairness or irregularity will suffice to authorize the relief sought." (quoting *Baldwin v. Brown*, 193 Cal. 345, 224 P. 462, 465 (1924)).

As noted above, costs of collection cannot be included in an association's superpriority lien. Because Deutsche alleges they were, there is an alleged and undisputed defect in the sale. However, the driving issue in this analysis is the gross inadequacy of the sales price. Deutsche thus has alleged facts supporting both unfairness and inadequate price. Accordingly, the motion to dismiss should be denied on this ground.

**F. Foreclosure Deed**

Deutsche argues that the Foreclosure Deed issued by Highland is not conclusive as to mailing of copies of notices (other than mailing a copy of the delinquent assessment) required by NRS 116.31162 through NRS 116.31168 and that for a conclusive presumption to apply, the

1 deed must provide a recital of facts specifying what the trustee has done, not just mere
2 conclusory statements that the trustee has complied with the law.  Highland argues that the
3 recitals made in the Foreclosure Deed are conclusive proof as to the matters cited therein,
4 specifically that the process complied with applicable law for foreclosure of HOA liens,
5 including providing for notice of the sale.

6       To conduct a foreclosure on this type of lien, an HOA must comply with certain notice
7 requirements at certain time intervals, including mailing a notice of delinquent assessment,
8 recording and mailing a notice of default and election to sell, and providing notice of the time
9 and place of the sale.  Nev.Rev.Stat. §§ 116.31162–116.311635.  A deed which recites that there
10 was a default, that the notice of delinquent assessment was mailed, that the notice of default and
11 election to sell was recorded, that 90 days have lapsed between notice of default and sale, and
12 that notice of the sale was given, is "conclusive proof of the matters recited."  *Id*. §
13 116.31166(1).  A deed containing these recitals also "is conclusive against the unit's former
14 owner, his or her heirs and assigns, and all other persons."  *Id*. § 116.31166(2).

15       Here, the foreclosure deed recites as follows:
16       WITNESSETH that the Grantor, pursuant to NRS 11.31162, 116.31163, and
17       116.31164 did sell under foreclosure of the Notice of Delinquent Assessment and
18       Claim of Lien Homeowners Association, identifying Anginique Wilson as the
19       homeowner(s), recorded January 9, 2012 as Document Number 4073963, of
20       Official Records of Washoe County, State of Nevada, the same having remained
21       unpaid and the Grantor having recorded a Notice of Default and Election to Sell
22       on June 27, 2012 as Document Number 4125742, of Official Records of Washoe
23       County, State of Nevada, and there being no satisfaction of the aforesaid
24       obligation, the sale was advertised, published and posted after the elapsing of 90
25       days from the recording and mailing of said Notice of Default and Election to Sell
26       according to the law and the sale having occurred on this date

27       Given that the foreclosure deed recites there was a default, the proper notices were given,
28 the appropriate amount of time has lapsed between notice of default and sale, and notice of the

10

sale was given, under § 116.31166(1), the foreclosure deed constitutes "conclusive proof" that the required statutory notices were provided. *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 80 F. Supp. 3d 1131, 1135 (D. Nev. 2015). Highland therefore has met its burden of showing the required statutory notices were provided. Deutsche provides no more than conclusory allegations that Highland "did not comply with all mailing and noticing requirements stated in NRS 116.31162 through NRS 116.31168."

### G. Retroactivity

Deutsche argues that Highland's motion should be denied because it is based on the Nevada Supreme Court's decision in *SFR Investments Pool 1, LLC v. U.S. Bank*, which cannot be applied retroactively. However, this is not the case. *SFR* did not announce a new rule of law, it merely clarified an existing statute. *Capital One, N.A., Plaintiff v. Las Vegas Dev. Grp., LLC, et al, Defendants*, No. 215CV01436JADPAL, 2016 WL 3607160, at *5 (D. Nev. June 30, 2016). Indeed, the *SFR* court itself applied its 2014 holding retrospectively to a 2012 foreclosure sale. *See SFR*, 334 P.3d at 419 (reversing dismissal of investor's complaint and vacating the order denying its motion to enjoin the Bank's trustee's sale of the property). And the Nevada Supreme Court has since applied the *SFR* holding in numerous cases that challenged pre-SFR foreclosure sales. *See, e.g., Centeno v. Mortgage Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "The district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR* applies to this case.

### H. Necessary Party

Highland argues that it is not a necessary party because Highland quitclaimed its interest to TBR and has not asserted an interest in the real property in this action.

///

"NRS 40.010 governs Nevada quiet title actions and provides: 'An action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim.'" *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (quoting Nev. Rev. Stat. § 40.010). Although "[a] plea to quiet title does not require any particular elements," each party must have or assert an interest in the property. *Id.* Deutsche does not allege that Highland has or claims, and Highland by its motion renounces, any present interest in this property. Indeed, Highland's interest was the lien it held before—and satisfied with the proceeds of—the foreclosure sale.

But Deutsche is challenging the validity of that sale, and the remedies it seeks in this action include declarations that the sale was invalid, that the sale did not extinguish Deutsche's interest, and that the HOA improperly calculated its lien. With some limitations not applicable here, Rule 19(a) of the Federal Rules of Civil Procedure requires a party to be joined in a suit if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [its] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [its] claimed interest." Fed. R. Civ. P. 19(a). The "complete relief" factor considers whether the existing parties can obtain "consummate rather than partial or hollow relief" and whether there is a real possibility of "multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983).

Based on the type of relief Deutsche prays for, it appears at this nascent stage of this litigation that Highland is a necessary party to TBR's quiet-title claim. The disposition of this action in Highland's absence may impair or impede Highland's ability to protect its interests. And if Deutsche succeeds in invalidating the sale without Highland being a party to this suit, separate litigation to further settle the priority and extent of the parties' respective liens and rights may be necessary. Thus, at this point, the HOA is a necessary party, at least nominally, and the motion to dismiss on this basis is denied.

**I. Mediation**

Highland argues that the Court lacks subject matter jurisdiction over TBR's claims because TBR did not first submit its third party claim against Highland to arbitration or mediation proceedings under NRS Chapter 38. TBR argues that dismissal of the first claim for relief in their third party complaint for quiet title is not appropriate because quiet title claims are not covered by NRS Chapter 38.

NRS 38.310 prevents the commencement of any "civil action based upon a claim relating to (a) The interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property or any bylaws, rules or regulations adopted by an association; or (b) The procedures used for increasing, decreasing or imposing additional assessments upon residential property, ... unless the action has been submitted to mediation ...." Nev. Rev. Stat. § 38.310. As the Nevada Supreme Court explained in *Hamm v. Arrowcreek Homeowners' Association*, "If a party institutes a civil action in violation of NRS 38.310(1), the district court must dismiss it" under NRS 38.310(2). *Hamm v. Arrowcreek Homeowners' Ass'n*, 183 P.3d 895, 900 (Nev. 2008); *McKnight Family, LLP v. Adept Mgmt.*, 310 P.3d 555, 558 (Nev. 2013) (the statute's language "mandates the court to dismiss any civil action initiation in violation of NRS 38.310(1)"). Section 38.300(3) defines a "civil action" to include "an action for money damages or equitable relief." Nev. Rev. Stat. § 38.300(3). But the statute expressly exempts from its preclusive reach "an action in equity for injunctive relief in which there is an immediate threat of irreparable harm, or an action relating to the title to residential property." Nev. Rev. Stat. § 38.300(3).

TBR brings two claims against Highland in its complaint: its first cause of action for declaratory relief/quiet title and its third cause of action for equitable indemnity and relief against Highland.

As to the first cause of action for declaratory relief/quiet title, the Nevada statute would not bar the claim because it "squarely relates to the title of residential property." *U.S. Bank, N.A. v. Ascente Homeowners Ass'n*, No. 215CV00302JADVCF, 2015 WL 8780157, at *2 (D. Nev. Dec. 15, 2015)

13

As to the third cause of action for equitable indemnity, NRS § 38.310 applies to the claim if it is a "civil action" as defined in § 38.300(3) and falls within § 38.310's scope. The claim for equitable relief is a "civil action" as defined because it is "an action for money damages or equitable relief." It does not fit into the exception excluding claims for injunctive relief in which there is an immediate threat or actions relating to the title to residential property. It also does not fit into the exception for "an action relating to the title to residential property" because the Nevada Supreme Court has defined this exception narrowly, noting that for the exception to apply the claim should directly relate "to an individual's right to possess and use his or her property." *McKnight Family, L.L.P. v. Adept Mgmt.,* 129 Nev. Adv. Op. 64, 310 P.3d 555, 559 (2013). TBR's equitable indemnity claim does not affect their right to possess and use the property because the claim only arises if the Court determines that Deutsche's interest in the property is superior. Finally, resolving the claim would involve the interpretation and enforcement of Highland's CC&Rs. TBR's equitable indemnity and relief claim is premised on Deutsche's claim that the HOA foreclosure sale complied with all applicable laws. Deutsche's arguments that the HOA foreclosure sale did not comply with all applicable laws include claims that Highland gave inadequate notice and the sale price was commercially unreasonable. "Each of these theories will require '[t]he interpretation, application or enforcement of' various provisions of NRS Chapter 116, which constitute "covenants, conditions [,] or restrictions applicable to residential property" or '[t]he interpretation, application or enforcement of' the HOA's 'bylaws, rules[,] or regulations.' *HSBC Bank, Nat'l Ass'n, as Tr. for Structured Adjustable Rate Mortgage Loan Trust 2004-12, Plaintiff v. Stratford Homeowners Association; SFR Investments Pool 1, LLC, Defendants*, No. 215CV01259JADPAL, 2016 WL 1555716, at *3 (D. Nev. Apr. 14, 2016) (quoting Nev. Rev. Stat. § 38.310(1)). Therefore, TBR's third cause of action for equitable indemnity is dismissed under NRS 38.310.

**IV. Conclusion**

IT IS THEREFORE ORDERED that Highland's Motion to Dismiss (ECF No. 23) is GRANTED in part and DENIED in part in accordance with this order.

///

IT IS FURTHER ORDERED TBR's third cause of action for equitable indemnity is DISMISSED from its Amended Answer to Complaint, Counterclaim, and Third Party Complaint (ECF No. 9) with prejudice.

IT IS FURTHER ORDERED that Highland's Request for Judicial Notice (ECF No. 23) is DENIED as moot.

IT IS SO ORDERED.

DATED this 22nd day of July, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE